JOCELYN BURTON, SBN 135879
MARA SACKMAN, SBN 330490
BURTON EMPLOYMENT LAW
1939 Harrison Street, Suite 400
Oakland, CA 94612
Ph: (510) 350-7025
Fax: (510) 473-3672
e-mail: jburton@burtonemploymentlaw.com
e-mail: msackman@burtonemploymentlaw.com

Attorneys for Plaintiff
KARL G. DEBRO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARL G. DEBRO,<br><br>            Plaintiff,<br><br>      vs.<br><br>CONTRA COSTA COMMUNITY COLLEGE DISTRICT, and MARILES MAGALONG, in her individual capacity;<br><br>            Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Karl Debro (hereinafter "Plaintiff") alleges:

**PRELIMINARY STATEMENT**

Plaintiff brings this action for monetary damages, civil penalties, statutory penalties, and injunctive relief under Title VII of the Civil Rights Act of 1964 as amended effective January 29, 2009, 42 U.S.C. § 2000e *et seq*. (hereinafter "Title VII"), 42 U.S.C. §§ 1981 and 1983, and the

United States Constitution and California Fair Employment and Housing Act, California Gov't Code § 12940 *et seq.* (hereinafter "FEHA"). Plaintiff seeks redress for injuries he sustained from Defendant Contra Costa Community College District's unlawful employment discrimination against him because of his race and Defendants Contra Costa Community College District's and Mariles Magalong's retaliation against Plaintiff for raising concerns about racial issues.

## JURISDICTION

1. This Court has jurisdiction over the subject matter and the parties under to 28 U.S.C. §§ 1331, 1343 conferring original jurisdiction upon this court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights, 42 U.S.C. §§ 1981 and 1983, 42 U.S.C. § 2000e-5 and under the Declaratory Judgment Statute, 28 U.S.C. § 2201.

2. This Court has supplemental jurisdiction over the related state claims under 28 U.S.C. § 1367. Plaintiff's claims pursuant to the FEHA, Cal. Gov't Code §§ 12940(a), (j), and (k) are related, as all of Plaintiff's claims share common operative facts. Resolving all state and federal claims in a single action serves the interests of judicial economy, convenience, and fairness to the parties.

## INTRADISTRICT ASSIGNMENT AND VENUE

3. Venue is proper in the United States District Court for the Northern District of California as the unlawful employment practices occurred in Contra Costa County, California. 28 U.S.C. § 1391(b)(2).

///

///

///

**PARTIES**

4. Plaintiff is a resident of California, employed by Defendant CONTRA COSTA COMMUNITY COLLEGE DISTRICT (hereinafter "CCCCD") at all times relevant to this Complaint.

5. At all times relevant to this Complaint, Defendant CCCCD is a California community college school district within the meaning of California Education Code § 70901 and may be sued pursuant to Education Code § 72000.  CCCCD oversees three community colleges in Contra Costa County, California:  Contra Costa College, Diablo Valley College and Los Medanos College.  At all times relevant to this Complaint, CCCCD was acting under the color of state law.  CCCCD is a "person" within the meaning of 42 U.S.C. §§ 1981, and 1983.

6. At all times relevant to this Complaint, Defendant MARILES MAGALONG ("Magalong") was the Acting President of Contra Costa College.  During all times mentioned in the Complaint, Magalong acted under the color of California law.  Magalong is a "person" within the meaning of 42 U.S.C. §§ 1981, 1983, and 1985.  Magalong is sued in her individual capacity.

7. At all times relevant to this Complaint, CCCCD is an employer covered by Title VII of the Civil Rights Act of 1964, as amended, in that it is engaged in an industry affecting commerce that has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

8. Defendants Magalong and CCCCD are collectively referred to as Defendants in this Complaint.

**GENERAL ALLEGATIONS**

9. Plaintiff was hired by CCCCD in 2008.  Before Plaintiff's employment with CCCCD he was a high school teacher for approximately twenty years.  In approximately 2012, Plaintiff

received his doctorate in Education. On approximately July 20, 2012, CCCCD promoted Plaintiff to the position of Academic Student Services Manager and Director of Gateway to College. His primary job duties are to manage and direct the Gateway to College program. This includes supervising employees, ensuring adequate coverage classes, mentoring students, developing programs and services for student, and managing disciplinary issues with staff and students.

10. Gateway to College is a program consisting of continuation high schools hosted on community college campuses. The program started on the CCCCD's Contra Costa College campus in August 2012 and is designed to support the academic success of people between the ages of 16 and 20 who have dropped out of high school or are unlikely to graduate. Students are required to take foundation classes in English, social studies, math, and other college skills. Upon completion of those courses, students begin taking classes with the general population of the college. Students graduate with high school diplomas and college credits.

11. A Memorandum of Understanding ("MOU") between Contra Costa College and West Contra Costa Unified School District ("WCCUSD") authorizes operation of the Gateway program on the Contra Costa College campus.

12. On or about April 25, 2019, Plaintiff prepared a statement that a colleague read at a forum at Contra Costa College in support of the President of Contra Costa College, Dr. Katrina VanderWoude. When Plaintiff prepared the statement, CCCCD were investigating Dr. VanderWoude for violating CCCCD's' discrimination and retaliation policies. Dr. VanderWoude is Black.

13. On May 7, 2019, Plaintiff facilitated a discussion of personnel and the issue of race on campus during a joint instructional and student services meeting. Plaintiff thought that it would be useful because the vast majority of the students participating in the Gateway program are Black or

Latinx. Prior to the meeting, then Vice President of Student Affairs Carsbia Anderson approved Plaintiff's plan to discuss the book White Fragility. White Fragility is a 2018 book written by Dr. Robin DiAngelo about race relations in the United States. Dr. DiAngelo is an academic who has conducted diversity training for over twenty years. The book describes racism as systemic and states that it is often unconsciously perpetuated. The book has spent more than a year at the top of the New York Times Bestseller List.

14. On or about May 16, 2019, two of Plaintiff's subordinates, Linda Johnson and Kerry Sciacqua, filed complaints alleging that Plaintiff had discriminated against them because of their race. Ms. Johnson and Ms. Sciacqua are white.

15. On or about May 29, 2019, Defendant CCCCD announced that Contra Costa College President Katrina VanderWoude and Interim Vice Presidents Carsbia Anderson and Susan Kincade had been placed on administrative leave pending an investigation. In addition to Dr. VanderWoude, Mr. Anderson is Black. Ms. Kincade is White. After the announcement, Plaintiff asked to meet to meet with managers. He asked the managers if they wanted to go around the room and discuss their feelings regarding the personnel issues involving the senior leadership of Contra Costa College.

16. Shortly after June 10, 2019, Plaintiff received a letter from Erika R. Sembrano of the law firm Atkinson, Andelson, Loya, Ruud & Romo advising him that Defendant CCCCD had recently received a complaint that Plaintiff had violated district policies prohibiting discrimination/harassment on the basis of race.

17. On or about August 1, 2019, the Chancellor of Defendant CCCCD, Fred Wood, called a meeting of several administrators. During the meeting, there was a heated discussion of whether the CCCCD engaged in racially discriminatory hiring practices against Blacks.

18. On August 13, 2019, Defendant CCCCD Associate Vice Chancellor and Chief Human Resources Officer Dio Shipp sent Plaintiff a letter summarizing the findings of their investigation of the May 16, 2019 complaints. Mr. Shipp stated that Plaintiff's discussion of the book White Fragility violated school policies prohibiting discrimination and harassment based on race. Additionally, Shipp stated that Plaintiff made others feel uncomfortable by discussing and encouraging others to discuss their point of view regarding CCCCD's decision to place Dr. VanderWoude, Mr. Carsbia Anderson, and Ms. Susan Kincade on administrative leave. Mr. Shipp stated that this made people feel uncomfortable because there seemed to be a racial aspect to the attempted conversation. The letter further stated that Plaintiff made comments that were reasonably construed as implying that there was a racial motivation behind the administrative leaves. Mr. Shipp stated the investigator determined that his conduct violated Board Policy 2002 by creating an uncomfortable an intimidating environment.

19. On or about August 20, 2019, Magalong sent Plaintiff a letter of reprimand. In this letter, Magalong stated that Plaintiff's choice to discuss the book White Fragility at the joint instructional and student services meeting offended and singled out others in the meeting. Magalong went on to state that Plaintiff's discussion with other managers about CCCCD's decision to place Dr. VanderWoude, Mr. Carsbia Anderson, and Ms. Susan Kincade on administrative leave could be seen as bullying, intimidation, and/or retaliation. In the letter, Magalong made the following Kafkaesque statement:

> Board Policy 2020, Human Resources Procedure 1040.07, and Human Resources Procedure 1040.08 prohibit discrimination/harassment, including verbal harassment, on the basis of race. Human Resources Procedure 1040.07 explains that harassment may come in many forms, including "[i]nappropriate or offensive remarks" based on a person's race or "patronizing or ridiculing statements that convey derogatory attitudes" based on race. Discussing the topic of "white fragility" in an administrative meeting, and making comments about race in a management meeting that you implied that the District had just taken employment

action based on race, were in violation of these policies. You made some of your coworkers feel offended, uncomfortable, mistrustful, and afraid.

The letter of reprimand concluded with a number of directives which included the following:

During administrative meetings, you are to invite commentary or feedback regarding any topics you decide to discuss. Should you desire to discuss a sensitive topic like racial bias, you are to consult your supervisor for ideas regarding the optimal way to facilitate the discussion, including, for example, bringing in an expert or a trained lecturer to lead the discussion, in order to comply with District policies regarding professional behavior, a non-retaliatory environment, and non-discrimination/harassment.

To the extent that you discuss the topic of race or sensitive topics in your capacity as a District manager, you must those topics in a sensitive manner, and be open to the fact that others may have differing, but valid viewpoints. You should also refrain from making generalized statements about people based on their race, particularly if those generalizations are not backed by scientific data. For example, it is perfectly acceptable to discuss student enrollment data and demographic trends, because these sorts of discussions are based on actual data. However, in terms of discussing the reasons for why the data is what it is, such discussions need to be held in a more sensitive manner.

Magalong concluded the letter by stating that failure to comply with these directives would result in additional discipline, including and up to dismissal.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

20. On or about May 20, 2020, Plaintiff submitted a complaint of discrimination and retaliation against CCCCD with the United States Equal Employment Opportunity Commission ("EEOC").

21. On or about June 2, 2020, Plaintiff received a right to sue letter from the California Department of Fair Employment and Housing, 555-2020-1260C.

22. On September 15, 2020, Plaintiff received a Right to Sue Letter from the EEOC against Defendant CCCCD.

///

///

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION
Discrimination on the Basis of Race
(Title VII of the Civil Rights Act of 1964, as amended effective January 29, 2009,
42 U.S.C. § 2000e *et seq.*)
(Against Defendant CCCCD)

23. Plaintiff incorporates the allegations of Paragraphs 1 through 22 by reference.

24. This is a claim for race discrimination in employment brought pursuant to Title VII of the Civil Rights Act of 1964.

25. Plaintiff is a Black man and a member of a protected class. He performed his job for CCCCD in a satisfactory manner.

26. Plaintiff was treated less favorably than other similarly employees in the terms and conditions of his employment by CCCCD and its agents.

27. Plaintiff's race was a motivating factor in CCCCD's decision to subject Plaintiff to discrimination and different terms and conditions of employment from employees who are not Black.

28. CCCCD has a pattern and practice of disciplining and terminating Black employees for racial discrimination and harassment while failing to discipline or terminate white employees for racial discrimination and harassment.

29. Plaintiff has suffered from emotional distress and reputational harm as a result of CCCCD's actions.

30. As a direct and proximate result of CCCCD's conduct, Plaintiff has suffered damages and requests relief as provided.

///

///

///

///

SECOND CAUSE OF ACTION
Discrimination on the Basis of Race
(California Government Code § 12940(a))
(Against CCCCD)

31. Plaintiff incorporates the allegations of Paragraph 1 through 22 above as though fully set forth.

32. The FEHA explicitly prohibits an employer from refusing to hire or employ a person, discharging a person from employment, or discriminating against such person in compensation or in the terms, conditions, privileges of employment on the basis of race. Cal. Gov. Code § 12940(a).

33. At all times relevant, Plaintiff was qualified for the position he held with CCCCD.

34. CCCCD is Plaintiff's employer under California Government Code section 12926(d) and is therefore barred from discriminating in its employment decisions in violation of Government Code section 12940(a).

35. CCCCD discriminated against Plaintiff based on his race, in violation of Government Code section 12940(a).

36. Plaintiff was treated less favorably than similarly situated employees who are not Black in the terms and conditions of employment because of his race.

37. During his employment with CCCCD, Plaintiff received discipline for infractions and similarly situated employees who are not Black did not receive discipline for the same or similar infractions.

38. CCCCD has a pattern and practice of disciplining and/or terminating Black employees based on the discrimination and/or harassment claims of white employees but failed to properly investigate and/or discipline white employees based on the racial discrimination or racial harassment claims of Black employees.

39. Plaintiff has suffered and continues to suffer economic and emotional distress damages resulting from the racial discrimination.

40. As a direct and proximate result of CCCCD's conduct, Plaintiff has suffered damages and requests relief as provided.

THIRD CAUSE OF ACTION
Failure to Prevent Discrimination and Retaliation
(California Government Code § 12940(k))
(Against CCCCD)

41. Plaintiff incorporates the allegations of Paragraph 1 through 22 by reference.

42. The FEHA requires an employer to "take all reasonable steps necessary to prevent discrimination and harassment from occurring." CAL. GOV. CODE § 12940.

43. CCCCD is Plaintiff's employer under Government Code section 12926(d) and is therefore required to prevent discrimination as set forth in Government Code section 12940(k).

44. CCCCD knew or should have known of the discrimination and retaliation by its employees, supervisors, and managers.

45. As set forth above, CCCCD did nothing to rectify or prevent said discrimination and retaliation. Instead, CCCCD consented to, encouraged, permitted, and/or acquiesced to the discrimination and retaliation.

46. As a result of the action of CCCCD, Plaintiff has suffered emotional distress and reputational harm.

47. As a direct and proximate result of CCCCD's conduct, Plaintiff has suffered damages and requests relief as provided.

///

///

///

FOURTH CAUSE OF ACTION
Retaliation
(Title VII of the Civil Rights Act of 1964, as amended effective January 29, 2009,
42 U.S.C. § 2000e *et seq.*)
(Against CCCCD)

48. Plaintiff incorporates the allegations of Paragraphs 1 through 22 by reference.

49. Plaintiff engaged in activity protected by Title VII when he raised concerns about racial issues at CCCCD.

50. CCCCD and its agents knew of Plaintiff's protected activity and retaliated against him because of his protected activity. After CCCCD learned of Plaintiff's protected activity, it took adverse actions against him, including but not limited to issuing Plaintiff with a letter of reprimand.

51. Plaintiff has suffered and continues to suffer economic and emotional distress damages resulting from the retaliation.

52. Plaintiff has incurred and continues to incur attorneys' fees and legal expenses in an amount according to proof at trial.

WHEREFORE, Plaintiff prays for relief and judgment as hereinafter set forth.

FIFTH CAUSE OF ACTION
Retaliation
(California Government Code § 12940(h))
(Against CCCCD)

53. Plaintiff incorporates the allegations of Paragraph 1 through 22 by reference.

54. Plaintiff engaged in activity protected by FEHA when he raised concerns about racial issues at CCCCD.

55. CCCCD and its agents knew of Plaintiff's protected activity and retaliated against him because of his protected activity. After CCCCD learned of Plaintiff's protected activity, it took adverse actions against him, including but not limited to altering the terms and conditions of Plaintiff's employment and issuing him a letter of reprimand.

56. Plaintiff has suffered and continues to suffer economic and emotional distress damages resulting from the retaliation.

57. Plaintiff has incurred and continues to incur attorneys' fees and legal expenses in an amount according to proof at trial.

WHEREFORE, Plaintiff prays for relief and judgment as hereinafter set forth.

### SIXTH CAUSE OF ACTION
(Violation of Civil Rights Act of 1871, 42 U.S.C. § 1981)
(Against Defendants)

58. Plaintiff incorporates the allegations of Paragraphs 1 through 22 by reference.

59. Defendants intentionally discriminated against Plaintiff on account of his race in violation of Title VII, the Civil Rights Act of 1871 and FEHA by denying to him equal terms and conditions of employment.

60. Plaintiff has suffered and continues to suffer emotional distress damages resulting from the discrimination.

61. Defendant Magalong acted with malice or reckless indifference to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff prays for relief and judgment as hereinafter set forth.

### SEVENTH CAUSE OF ACTION
(Violation of 42 U.S.C. § 1983)
(Against Defendant Magalong)

62. Plaintiff incorporates the allegations of Paragraphs 1 through 22 by reference.

63. Defendant Magalong intentionally retaliated against Plaintiff for exercising his Rights to Freedom of Speech under the First Amendment of the United States Constitution.

64. Defendant Magalong was acting or purporting to act in the performance of her official duties as Acting President of Contra Costa College and under color of state law.

65. When Plaintiff spoke about racial or personnel issues, he was speaking as a citizen on a matter of public concern and not as a part of his official duties.

66. Defendant Magalong's conduct violated Plaintiff's rights to Freedom of Speech guaranteed under the First Amendment to the United States Constitution.

67. Plaintiff's discussion of racial issues was a substantial motivating reason for Defendant Magalong's decision to reprimand Plaintiff.

68. Plaintiff suffered and continues to suffer emotional distress and reputational harm from Defendant Magalong's conduct.

69. Defendant Magalong's retaliation for Plaintiff's exercise of his First Amendment Rights to Freedom of Speech guaranteed under the United States Constitution was a substantial factor in causing Plaintiff harm.

70. Defendant Magalong acted with malice or reckless indifference to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff prays for relief and judgment as hereinafter set forth.

EIGHTH CAUSE OF ACTION
(Violation of 42 U.S.C. § 1983)
(Against Defendant CCCCD)

71. Plaintiff incorporates the allegations of Paragraphs 1 through 22 by reference.

72. Defendant CCCCD has policies of Employee Code of Ethical Behavior and Unlawful Discrimination and Unlawful Harassment that as a matter of custom and practice discriminate against Black employees and violates the rights to freedom of speech guaranteed to employees under the United States Constitution.

73. Defendant Magalong was the acting President of Contra Costa College and is an employee of Defendant CCCCD and was acting under color of state law.

74. Defendant CCCCD authorized and granted to Defendant Magalong the unrestrained authority to enforce its Employee Code of Ethical Behavior and Unlawful Discrimination and Unlawful Harassment policies and to discipline employees for violations of the policies.

75. When Plaintiff spoke about racial or personnel issues, he was speaking as a citizen on a matter of public concern and not a part of his official duties.

76. Defendant Magalong intentionally retaliated against Plaintiff for exercising his right to freedom of speech guaranteed by the First Amendment of the United States Constitution.

77. When Defendant Magalong retaliated against Plaintiff for exercising his right to freedom of speech guaranteed by the First Amendment of the United States Constitution, she was acting as a final policy maker for Defendant CCCCD.

78. Defendant Magalong's conduct violated Plaintiff's rights to Freedom of Speech guaranteed under the First Amendment to the United States Constitution.

79. Plaintiff's discussions of a racial and personnel issues was a substantial motivating reason for Defendant Magalong's decision to reprimand Plaintiff

80. Plaintiff suffered and continues to suffer emotional distress and reputational harm from Defendant Magalong's conduct.

81. Defendant Magalong's retaliation for Plaintiff's exercise of his First Amendment Rights to Freedom of Speech guaranteed under the United States Constitution was a substantial factor in causing Plaintiff harm.

82. Defendant Magalong acted because of Defendant CCCCD discriminatory use of its Employee Code of Ethical Behavior and Unlawful Discrimination and Unlawful Harassment policies.

WHEREFORE, Plaintiff prays for relief and judgment as hereinafter set forth.

## JURY DEMAND

Plaintiff demands a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants:

1. Grant a declaratory judgment that Defendants violated the laws of the United States and the State of California;

2. For a monetary judgment representing compensatory damages including lost wages, earnings, employee benefits, and all other sums of money, together with interest on these amounts, according to proof;

3. For an award of punitive damages against Defendant Magalong;

4. For a monetary judgment for emotional pain and suffering, according to proof;

5. For the costs of suit and attorney's fees including attorney's fees pursuant to 42 U.S.C. 1988, § 2000e-5 and California Government Code § 12965;

6. For prejudgment and post judgment interest; and

7. For any further relief that is just and proper.

Dated: December 14, 2020

Burton Employment Law

By: //ss//Jocelyn Burton//ss//
Jocelyn Burton
Attorney for Plaintiff
KARL DEBRO