IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARL DEBRO,<br><br>            Plaintiff,<br><br>     v.<br><br>CONTRA COSTA COMMUNITY COLLEGE DISTRICT, et al.,<br><br>            Defendants. | Case No. 20-cv-08876-CRB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

From 2008 to 2020, Plaintiff Karl Debro, a Black man, was employed by Defendant Contra Costa Community College District ("the District"). At a staff meeting in April 2019, Debro facilitated a discussion among his employees about institutional racism. Two of his subordinates filed discrimination complaints against him. In May 2019, Debro made comments suggesting that the District had racially discriminatory employment practices. In December 2020, after an investigation into Debro's conduct, the District terminated his employment. Debro sued the District, alleging employment discrimination in violation of federal and state law, failure to prevent discrimination in violation of state law, retaliation in violation of federal and state law, Section 1981 and 1983 claims, and a Tameny claim for violation of public policy. The District moves to dismiss.

The Court denies the motion to dismiss with respect to the discrimination, failure to prevent discrimination, and retaliation claims. The Court grants the motion without leave to amend with respect to the Section 1981, 1983, and Tameny claims.[1]

---

[1] Debro also filed a claim against Mariles Magalong, the President of the District. Magalong did not move to dismiss.

## I. BACKGROUND

Debro, a Black man, was hired by the District in 2008. First Amended Compl. (FAC) ¶¶ 4, 9. Previously, Debro had worked for twenty years as a high school teacher. Id. In 2012, he was promoted to be the head of its Gateway to College program ("Gateway"). Id. ¶ 9. Gateway is a continuation program that assists high school students in danger of dropping out. Id. ¶ 10. The "vast majority of the students participating in the Gateway program are Black or Latinx." Id. ¶ 13.

In April 2019, the District investigated its president Dr. Katrina VanderWoude for violating its discrimination and retaliation policies. Id. ¶ 12. Dr. VanderWoude is Black. Id. On April 25, Debro prepared a statement of support for Dr. VanderWoude that a colleague read on his behalf. Id. At a "joint instructional and student services personnel meeting" on May 7, Debro facilitated a discussion about institutional racism centered around the book White Fragility by Robin DiAngelo. Id. ¶ 13. Vice President of Student Affairs Carsbia Anderson, who is Black, had approved Debro's plan to facilitate this discussion. Id. On May 16, two of Debro's subordinates, Linda Johnson and Kerry Sciacqua, both white, filed complaints against Debro alleging racial discrimination. Id. ¶ 14. In June, Debro was informed of this complaint. Id. ¶ 16.

On or about May 29, the District announced that VanderWoude, Anderson, and Vice President Susan Kincade were placed on administrative leave pending an investigation. Id. ¶ 15. Kincade is white. Id. Debro asked to meet with managers on May 29 and asked if they "wanted to go around the room and discuss their feelings regarding the personnel issues involving the senior leadership of [the District]." Id. ¶ 15. In August, Dr. Fred Wood, the Chancellor of the District, called a meeting of administrators, who engaged in a heated discussion about whether the District engaged in racially discriminatory hiring practices against Blacks. Id. ¶ 17. Debro does not allege whether he was present at this meeting. Id.

On August 13, the Associate Vice Chancellor and Chief Human Resources Officer Dio Shipp sent Debro a letter summarizing the findings of the District's investigation into the May 16 complaints. Id. ¶ 18. They stated that Debro's discussion of White Fragility violated school policies prohibiting discrimination and harassment based on race and that he "made others feel uncomfortable by discussing and encouraging others to discuss their point of view" about the

District's decision to place its administrators on leave. Id. ¶ 18.  The letter stated that Debro had violated Board Policy 2002 by creating an "uncomfortable an[d] intimidating environment." Id. One week later, Magalong, the President of the District, sent Debro a letter of reprimand stating that the discussion of White Fragility "offended and singled out others" and his discussion with other managers about administrative leave "could be seen as bullying, intimidation, and/or retaliation." Id. ¶ 19.  It included a number of directives, such as:

> Should you desire to discuss a sensitive topic like racial bias, you are to consult your supervisor for ideas regarding the optimal way to facilitate the discussion, including, for example, bringing in an expert or a trained lecturer to lead the discussion, in order to comply with District policies regarding professional behavior, a non-retaliatory environment, and non-discrimination/harassment.

Id.  Magalong concluded by stating that failure to comply with these directives would result in additional discipline, up to and including termination.  Id.

Two months later, in October 2019, Sciacqua and Johnson again filed discrimination and retaliation complaints against Debro, prompting an investigation by the District.  Id. ¶ 20.  On June 16, 2020, the District informed Debro the charges against him had been sustained.  Id. ¶ 24. The District found that Debro had:

> 1) required his employees to falsify student attendance records, 2) demanded that employees use their personal cell phones for business use, 3) cancelled one-on-one meetings with Sciacqua and Johnson, 4) refused to make accommodations for disability, 5) proposed a retaliatory evaluation of Johnson, 6) required non credentialed resource specialists to teach classes, 7) engaged in racially discriminatory behavior, 8) interfered with employee rights and protected union activities, 9) financially mismanaged the Gateway Program, and 10) [engaged in] insubordination.

Id.  After Debro received a Notice and Statement of Charges That There Exists Cause to Dismiss An Academic Manager, he requested a Skelly Hearing and submitted a response to the allegations. Id. ¶ 25.  On December 14, 2020, the District voted to terminate Debro's employment.  Id.

Plaintiff received a right to sue letter from the EEOC, the DOJ, and the California Department of Fair Employment and Housing.  Id. ¶¶ 26–31.  He filed his first amended complaint on October 5, 2021.

3

## II. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) applies when a complaint lacks either a "cognizable legal theory" or "sufficient facts alleged" under such a theory. Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019). Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). When dismissing a case, courts generally must give leave to amend unless it is "determined that the pleading could not be cured by the allegation of other facts" and therefore amendment would be futile. Cook, Perkiss & Leihe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir. 1990).

## III. DISCUSSION

The Court denies the District's motion to dismiss with respect to the discrimination, failure to prevent discrimination, and retaliation claims. The Court grants the motion to dismiss without leave to amend with respect to the Section 1981, 1983, and Tameny claims.

### A. Discrimination Under Title VII and California's FEHA

Title VII and California's Fair Employment and Housing Act ("FEHA") include identical text: both make it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race" 42 U.S.C. § 2000e–2(a)(1); Cal. Gov't Code § 12940(a). Debro alleges sufficient facts to state discrimination claims under these statutes.

The District argues that Debro's Title VII and FEHA claims should be dismissed because he has not established a prima facie case for employment discrimination under the McDonnell

1    Douglas framework. See Mot. at 6–7. However, the Supreme Court has squarely held that, at the
2    motion to dismiss phase, a "plaintiff need not plead a prima facie case of discrimination."
3    Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002). The McDonnell Douglas framework is
4    an evidentiary standard, not a pleading requirement. Id. at 510; accord Johnson v. Riverside
5    Healthcare Sys., LP, 534 F.3d 1116 (9th Cir. 2008). Swierkiewicz held that the plaintiff's
6    allegations gave the defendant fair notice of the claim and "the grounds upon which it rests" by
7    providing: (1) the facts detailing the events leading to the plaintiff's termination; (2) relevant
8    dates; and (3) the nationalities of the individuals involved. Id. at 512, 514; see also Starr v. Baca,
9    652 F.3d 1202 (9th Cir. 2011) (reaffirming Swierkiewicz in light of Twombly and Iqbal); Achal v.
10   Gate Gourmet, Inc., 114 F. Supp. 3d 781, 796–97 (N.D. Cal. 2015) (applying Swierkiewicz to
11   California FEHA claims).

12        Debro meets this standard. He establishes he is a member of a protected class. See FAC ¶
13   4. He alleges the events leading to his termination, including relevant dates and the races of the
14   parties involved. See id. ¶¶ 12–25. Debro also alleges that there was turmoil within the District
15   regarding its allegedly racially discriminatory hiring policies. Id. ¶¶ 12, 15, 18. Because these
16   facts put the District on notice of the claims against them, the Court denies the District's motion
17   with respect to claims one and two.

18       B.    **Failure to Prevent Discrimination**

19        In California, it is unlawful for an employer "to fail to take all reasonable steps necessary
20   to prevent discrimination and harassment from occurring." Cal. Gov't Code § 12940(k). To
21   recover on a claim of a failure to prevent discrimination, the plaintiff must show that: "(1) [he]
22   was subjected to discrimination; (2) defendant failed to take all reasonable steps to prevent
23   discrimination; and (3) this failure caused plaintiff to suffer injury, damage, loss or harm." Achal,
24   114 F. Supp. at 804. A failure to prevent discrimination claim is "essentially derivative of a
25   [FEHA] discrimination claim." Id. In other words, if Debro sufficiently pleads a discrimination
26   case under FEHA, he has met the pleading requirement for a failure to prevent discrimination
27   claim. Since Debro has adequately pleaded his FEHA claim, the Court denies the District's
28   motion with respect to claim three.

### C. Retaliation Under Title VII and FEHA

Title VII and FEHA make it an "unlawful employment practice" for an employer to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a); Cal. Gov't Code § 12940(h). To establish a prima facie case of retaliation under either statute, a plaintiff must show: (1) he undertook a protected activity; (2) that he suffered from an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action. Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000). The District again incorrectly asserts that Debro's retaliation claims fail because he cannot establish a prima facie case. Reply (dkt. 21) at 6. But "Swierkiewicz's liberal reading of Rule 8(a) applies with equal force to discrimination and retaliation claims." Edwards v. Marin Park, Inc., 356 F.3d 1058, 1062 (9th Cir. 2004).

Debro sufficiently pleads that he engaged in a protected activity and that it caused an adverse employment action. First, he prepared a statement of support for Dr. VanderWoude. FAC ¶ 12. Then, after she and others were placed on administrative leave, Debro asked at a meeting if the managers "wanted to go around the room and discuss their feelings regarding the personnel issues involving the senior leadership of [the District]." Id. ¶ 15. The District construed Debro's conduct as a statement of his belief that it had racially discriminatory practices. See Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn., 555 U.S. 271, 276 (2009) (communicating to an employer the belief that he engaged in discriminatory activity "virtually always" constitutes opposition); Yanowitz v. L'Oreal USA, Inc., 116 P.3d 1123, 1133 (Cal. 2005) (similar). In an August 2019 letter, Associate Vice Chancellor and Chief Human Resources Officer Shipp told Debro that his comments "were reasonably construed as implying that there was a racial motivation behind the administrative leaves." Id. ¶ 18. Similarly, in her reprimand letter, Magalong, the president of the District, stated that Debro "implied that the District had just taken employment action based on race." Id. ¶ 19. The District later fired Debro. Id. ¶ 25. The District plausibly dismissed him because it understood him to have communicated that the District made employment decisions based on race. Therefore, the Court denies the motion to dismiss claims four and five.

6

### D. Discrimination Under 42 U.S.C. §§ 1981 and 1983

In his sixth and eighth claims, Debro alleges that the District's conduct violated 42 U.S.C. §§ 1981 and 1983. These claims fail as a matter of law.

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. Thus, § 1981 prohibits discrimination with respect to contracts "on account of [the plaintiff's] race or ethnicity." Johnson, 534 F.3d at 1123. A § 1981 claim must be based upon a contractual relationship. See Domino's Pizza v. McDonald, 546 U.S. 470, 479–80 (2006); see also Zimmerman v. City & Cty. of San Francisco, No. c–93–4045–MJJ, 2000 WL 1071830, at *10 (N.D. Cal. July 27, 2000) (citation omitted).

The Section 1981 claim fails for two independent reasons. First, it is "well-settled" that in California, the terms and conditions of public employment are determined by statute, not by contract. See, e.g., Kemmerer v. County of Fresno, 200 Cal.App.3d 1426, 1432–35 (1988); Zimmerman, 2000 WL 1071830, at *10; Miller v. State of California, 18 Cal.3d 808, 813 (1977). "Since a contract of employment does not control the terms and conditions of civil service employment" between Debro and the District, there is no contractual foundation for a § 1981 claim. Zimmerman, 2000 WL 1071830, at *10. Second, the § 1981 claim fails because the District is not a proper defendant. "[U]nder California law, [a community college] district is a state entity that possesses eleventh amendment immunity from the appellant's section 1981, 1983 and 1985 claims in damages." Mitchell v. Los Angeles Cmty. Coll. Dist., 861 F.2d 198, 201 (9th Cir. 1988); accord Cerrato v. San Francisco Cmty. Coll. Dist., 26 F.3d 968, 972 (9th Cir. 1994). As a dependent instrumentality of the state, the District is immune from suit under the Eleventh Amendment.

Debro's § 1983 claim also fails on Eleventh Amendment grounds. Section 1983 forbids a person acting under the color of state law from depriving others of their constitutional rights. 42 U.S.C. § 1983; see West v. Atkins, 487 U.S. 42, 48 (1988). The District is immune from a § 1983 suit. See Mitchell, 861 F.2d at 201; Cerrato, 26 F.3d at 972; see also, e.g., Fletcher v. Cal. Corr. Health Care Servs., No. 16-cv-04187-YGR(PR), 2016 WL 5394125, at *2 (N.D. Cal. Sept. 27,

2016) ("Plaintiff has failed to name a proper defendant. He only named [the school district], which is a state agency and therefore not a 'person' under section 1983.") (citation omitted). Accordingly, the Court dismisses claims six and eight without leave to amend.

### E. Wrongful Discharge in Violation of Public Policy

In his ninth and final claim, Debro claims that the District wrongfully terminated his employment in violation of public policy. See FAC at 16–17; Tameny v. Atl. Richfield Co., 27 Cal. 3d 167, 170 (1980) ("[W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions."). Debro grounds his Tameny claim in the California Constitution and two statutory provisions that declare the state's policy against discriminatory hiring and employment practices. Cal. Gov't Code §§ 12920, 12940. However, Section 815 of the Government Claims Act "bars Tameny actions against public entities." Miklosy v. Regents of Univ. of California, 44 Cal. 4th 876, 899–900 (2008). As the District is a public entity, the Court dismisses claim nine without leave to amend.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES the motion to dismiss with respect to the discrimination, failure to prevent discrimination, and retaliation claims (claims one through five). The Court GRANTS the motion without leave to amend with respect to the Section 1981, 1983, and Tameny claims (claims six, eight, and nine).

IT IS SO ORDERED.

Dated: November 30, 2021

CHARLES R. BREYER
United States District Judge